UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LUIS MARTINEZ, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   20-153 (RC) |
| | : | |
| v. | : | Re Document Nos.:   6, 12 |
| | : | |
| CONSTELLIS/TRIPLE CANOPY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE**

**I.  INTRODUCTION**

In this hostile work environment suit, Plaintiff Luis Martinez alleges that his employer, Defendant Constellis/Triple Canopy ("Constellis"), violated the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11.  Specifically, Mr. Martinez alleges that Constellis employees and supervisors subjected him to repeated questioning about his beard and to a urinalysis test under false pretenses.  Defendant now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's hostile work environment claims.  For the reasons explained below, the Court will grant Defendant's motion to dismiss.

**II.  FACTUAL BACKGROUND**[1]

Mr. Martinez is an armed security guard employed by Constellis at the Ronald Reagan International Trade Center in Washington, D.C.  Compl. ¶¶ 3–4, ECF No. 1-1.  He has worked at

---

[1] As the citations indicate, the facts recounted here are drawn mostly from the complaint, as well as Mr. Martinez's response to the motion to dismiss ("Pl.'s Resp."), ECF No. 9.  *See Brown v. Whole Foods Market Corp.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("[A] district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss.") (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C.

this position since January 1, 2018.  Compl. ¶ 3.  Mr. Martinez has an overgrown surgical scar known as a keloid that he covers with a beard and suffers from chronic folliculitis of the face and a neck, a condition that is aggravated by shaving.  Compl. ¶¶ 6–7.[2]  Because of these conditions, a pre-employment physician gave Mr. Martinez an "Indefinite Term Waiver" in 2014, which exempted him from shaving requirements.  Compl. ¶ 8.  However, even under the medical waiver, Mr. Martinez was required to ensure that his "beard hairs are trimmed and do not protrude more than one-fourth of an inch from the face."  Compl. ¶ 9.

Since the start of Mr. Martinez's employment in 2018, he alleges that he has been subject to repeated questioning about his beard by Mr. Williams, Constellis's Contractor Manager for Mr. Martinez's contract.  Compl. ¶ 11.  On one day in January 2019, Mr. Beasley, a Quality Control Inspector for Constellis, asked Mr. Martinez questions about his uniform and beard, telling Mr. Martinez that his beard was "stylized" in violation of company policy.  Compl. ¶ 10;

---

Cir. 1999)).  Without leave of court, Mr. Martinez later filed a further response to the motion to dismiss ("Pl.'s Surreply"), ECF No. 11, which the Defendant has moved to strike, ECF No. 12.  The Court will consider the surreply over the Defendant's objection to the extent that it clarifies the single claim raised in the complaint: a hostile work environment claim based on appearance and disability.  *See Schmidt v. Shah*, 696 F. Supp. 2d 44, 60 (D.D.C. 2010) (citing *Wada v. U.S. Secret Serv.*, 525 F. Supp. 2d 1, 9 (D.D.C. 2007) (explaining that courts may consider sur-replies by *pro se* litigants, over an opposing party's objection, in order to clarify the precise claims being asserted).  However, Plaintiff's response and unauthorized surreply also briefly reference possible additional claims and theories arising out of the same basic facts.  *See, e.g.*, Pl.'s Resp. at 4 (mentioning "negligence and endangering [Plaintiff's] life as well as emotional damages"); Pl.'s Surreply at 5–6 (mentioning "disparate-treatment discrimination" and suggesting that Plaintiff was discriminated against based on his race).  Because these new theories fall outside the scope of the complaint, the Court declines to address them here.  *See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").  However, Mr. Martinez remains free to raise them in a future amended complaint, if he so chooses.

[2] Mr. Martinez also suffers from Post-Traumatic Stress Disorder, but does not rest his hostile work environment claims on this condition.  Pl.'s Resp. at 3.

Pl.'s Surreply at 2. The following day, another Quality Control inspector for Constellis, standing with Mr. Williams and Mr. Beasley, again questioned Mr. Martinez about his beard. Compl. ¶ 11.

On October 9, 2019, Mr. Williams and representatives of the General Services Administration (Constellis's contracting agency for Mr. Martinez's contract), Major Joyce Brunson and Major Gerald Rouse, called Mr. Martinez into the plaza behind the Ronald Reagan building—allegedly "to take a survey." Pl.'s Surreply at 2. As part of this exercise, Mr. Williams and the agency representatives asked for Mr. Martinez's security belt. Pl.'s Resp. at 2. Major Brunson then took Mr. Martinez in his personal vehicle to a lab facility for a urinalysis. Compl. ¶¶ 12–14. On the same day, as part of what it claimed was an ongoing criminal investigation by the U.S. Federal Protective Service, Constellis also drug tested another armed security guard with a beard, Mr. White. Compl. ¶ 13. Mr. Martinez alleges that the manner in which he was tested was a violation of his Collective Bargaining Agreement. Pl.'s Surreply at 3. Mr. Martinez was also embarrassed because he was targeted for urinalysis and forced to give up his utility belt in a public area. Compl. ¶¶ 12–14. As a result of the October 9, 2019 incident, some of his coworkers assumed he was being fired, and Mr. Martinez has endured jokes by fellow employees. Pl.'s Surreply at 3. For example, colleagues, seemingly in jest, suggested "that a bag was put over [Mr. Martinez's] head and [he was] forced into the trunk of a car and taken somewhere." *Id.* Mr. Martinez has also alleged that he suffered loss of appetite and heightened depression and anxiety as a result of these events. *Id.* at 7.

Plaintiff's complaint alleges that he "was subjected to a hostile work environment" as a result of these incidents "on the basis of his appearance (Beard) and disability (keloid and chronic folliculitis)." Compl. ¶ 14. Although Plaintiff did not cite any particular statute in his

complaint, the Court will construe Plaintiff's hostile work environment claim as arising under the DCHRA because, unlike Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, the DCHRA prohibits discrimination on the basis of appearance. Furthermore, in its motion to dismiss, Defendant assumes that Plaintiff's claim fell under the DCHRA, Def.'s Mot. to Dismiss at 3–4, ECF No. 6, and Plaintiff later clarified that his claim was made pursuant to the DCHRA, Pl.'s Surreply at 4. Regardless of the specific statutory provisions involved, the legal analysis would be similar. *See Clemmons v. Academy for Educational Development*, 70 F. Supp. 3d 282, 294 (D.D.C. 2014) (explaining that the D.C. Court of Appeals "has made it clear that federal case law addressing questions arising in Title VII cases is applicable to the resolution of analogous issues raised regarding DCHRA claims") (quoting *Ali v. District of Columbia*, 697 F. Supp. 2d 88, 92 n.6 (D.D.C. 2010)); *Ramey v. Potomac Elec. Power Co.*, 468 F. Supp. 2d 51, 60 (D.D.C. 2006) (explaining that "DCHRA and federal discrimination claims are analyzed under the same legal standard").

### III.  LEGAL STANDARD

To pursue a claim in federal court, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Greggs v. Autism Speaks, Inc.*, 987 F. Supp. 2d 51, 55 (D.D.C. 2014). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See Campbell v. District of Columbia*, 972 F. Supp. 2d 38, 44 (D.D.C. 2013). A court, however, need not accept a plaintiff's legal conclusions as true, *see Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009), nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Additionally, when a *pro se* plaintiff is involved, "the Court must take particular care to construe the plaintiff's filings liberally, for such [filings] are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).[3] Yet "even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Dismissal always remains appropriate "where the plaintiff's complaint provides no factual or legal basis for the requested relief." *Strunk v. Obama*, 880 F. Supp. 2d 1, 3 (D.D.C. 2011) (internal citations omitted).

## IV.  ANALYSIS

To summarize, Mr. Martinez alleges that since January 1, 2018 he has experienced a hostile work environment in the following ways: Constellis Contract Manager, Mr. Williams, repeatedly questioned Mr. Martinez about the length and trim of his beard; Constellis Quality Control Inspector, Mr. Beasley, questioned Mr. Martinez about his beard and uniform, accusing Mr. Martinez of having a "stylized" beard; the next day, another Constellis Quality Control Inspector questioned Mr. Martinez about his beard; and Mr. Martinez's supervisor Major Brunson, Mr. Martinez's superior Major Rouse, and Mr. Williams subjected Mr. Martinez to a

---

[3] In its motion to strike Plaintiff's unauthorized sur-reply, Defendant casts doubt on Plaintiff's *pro se* status. *See* Def.'s Mot. to Strike ¶¶ 7–8, 10, ECF No. 12. However, in light of inconclusive evidence on the question and the general rule that courts may continue to treat individuals who retain limited assistance of counsel in briefings as *pro se*, the Court will continue to accord Plaintiff the benefit of *pro se* status. *See Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 56 (D.D.C. 2015).

random urinalysis test under false pretenses and escorted him to the lab in Major Rouse's personal vehicle. *See* Pl.'s Resp. at 2; Pl.'s Surreply at 1–2. The question is whether these episodes are sufficient to make out a legally sufficient hostile work environment claim.

"The law is clear that to establish a claim of discrimination based on a hostile work environment under the DCHRA, a plaintiff must show: '(1) that he is a member of a protected class, (2) that he has been subjected to unwelcome harassment, (3) that the harassment was based on membership in a protected class, and (4) that the harassment is severe and pervasive[4] enough to affect a term, condition, or privilege of employment.'" *Campbell-Crane & Assocs., Inc. v. Stamenkovic*, 44 A.3d 924, 933 (D.C. 2012) (quoting *Daka, Inc. v. Breiner*, 711 A.2d 86, 92 (D.C. 1998)). At the motion to dismiss stage, "[a]lthough a plaintiff need not plead a prima facie case of hostile work environment in the complaint, the 'alleged facts must support such a claim.'" *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 69 (D.D.C. 2011), *aff'd in part*, No. 11-5247, 2012 WL 1450565 (D.C. Cir. Apr. 12, 2012), and *aff'd sub nom. McKeithan v. Vance-Cooks*, 498 F. App'x 47 (D.C. Cir. 2013) (quoting *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 90–91 & n.6 (D.D.C. 2010)).

---

[4] *Campell-Crane*'s and *Daka*'s passing reference to "severe *and* pervasive" (as opposed to Title VII's "severe *or* pervasive" standard, *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) is likely inadvertent. As already mentioned, courts have made clear that the DCHRA's hostile work environment standard is "substantial[ly] similar" to the standard for Title VII harassment claims. *See Carpenter v. Fed. Nat'l Mortgage Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999). And the severe *or* pervasive standard is well-established, and has been cited elsewhere by the D.C. Court of Appeals as the correct standard under the DCHRA. *See Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 888 (D.C. 2003) (quoting *Harris*, 510 U.S. at 21). Additionally, courts in this district have regularly applied the disjunctive standard to DCHRA claims. *See, e.g.*, *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 96 (D.D.C. 2007) (analyzing Title VII and DCHRA hostile work environment claims together under "severe or pervasive" framework) (quoting *Harris*, 510 U.S. at 21); *Bricoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 86 (D.D.C. 2014) (analyzing DCHRA claims under Title VII's "severe or pervasive" framework).

For the purposes of its motion to dismiss, Defendant assumes that Plaintiff is a member of protected classes based on appearance (having a beard) and disability (folliculitis). Def.'s Mot. to Dismiss at 5. However, Defendant argues that Mr. Martinez has not sufficiently alleged facts supporting two elements of a hostile work environment claim: (1) that any of the alleged harassment was based on his membership in a protected class or (2) that the alleged harassment was severe or pervasive enough to affect a term, condition, or privilege of employment. *Id.* at 5–6. The Court will discuss each contention in turn.

### A. Was the Alleged Harassment Based on a Protected Status?

To make out an actionable hostile work environment claim, the plaintiff must plead facts indicating that the alleged "harassment occurred because of . . . [his] protected status." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012) (citation omitted); *see also Dorns v. Geithner*, 692 F. Supp. 2d 119, 135–36 (D.D.C. 2010) (internal citations omitted). This showing requires a "linkage between the hostile behavior and the plaintiff's membership in a protected class." *Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 101 (D.D.C. 2011) (quoting *Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009)).

#### 1. Appearance

First, the Court considers whether Mr. Martinez has alleged facts indicating that the alleged harassment was carried out because of his bearded appearance. "[P]ersonal grooming, including, but not limited to hair style and beards" is a protected status under the DCHRA. D.C. Code § 2-1401.02(22). And here, Mr. Martinez alleges that he was repeatedly asked about his beard, which establishes an obvious linkage between the conduct and his protected status. At the same time, however, the DCHRA also includes a so-called "'prescribed standards' exception," *Turcios v. U.S. Servs. Indus.*, 680 A.2d 1023, 1026 (D.C. 1996), which clarifies that personal

7

appearance "shall not relate, however, to the requirement of cleanliness, uniforms, or prescribed standards . . . when uniformly applied to a class of employees for a reasonable business purpose," D.C. Code § 2-1401.02(22).[5]  Relying on this exception, Defendant suggests that the alleged questions were "properly directed at ensuring that the employer's specific policies regarding beard grooming were being followed."  Def.'s Mot. to Dismiss at 8.  While the Defendant's argument may ultimately succeed, it is premature here.  An employer's contention that it "ha[s] not discriminated against [an employee] on the basis of his personal appearance because its conduct fell within the 'prescribed standard' exception" is "an affirmative defense," meaning it is the Defendant's burden to prove that the standards were applied uniformly for a reasonable business purpose.  *Turcios*, 680 A.2d at 1026.  Such "an affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint."  *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).  That clarity is lacking here.  While the complaint acknowledges that Defendant *has* a grooming policy, it also suggests (or can be fairly read to imply) that the policy was being applied in an unfair or harassing manner: even after Mr. Martinez explained his reasons for having a beard and cited his waiver, he was still questioned about his beard the next day. Compl. ¶ 11.  Additionally, the complaint makes a connection between the urinalysis and Mr. Martinez's appearance: it alleges that another bearded Protective Service Officer, Frank White, was also subjected to a urinalysis.  Compl. ¶ 13.  This, of course, does not prove that both men were targeted based on their appearance (rather than for some other legitimate, non-

---

[5] Moreover, the DCHRA's Enforcement Guidance specifically allows employers to require adherence to grooming standards for beards.  *See* D.C. Human Rights Office, OHR Enforcement Guidance 17-03, Unlawful Treatment Based on Personal Appearance, Political Affiliation and Matriculation (2017).

discriminatory reason), but it does suggest a minimal causal link sufficient for the motion to dismiss stage. In sum, the Court finds that the complaint sufficiently alleges a linkage—albeit a slight one—between Plaintiff's appearance and both kinds of allegedly harassing conduct.

### 2. Disability

Again, as noted above, the Court follows Defendant's lead and assumes for the purposes of this motion that Plaintiff's disabilities (chronic folliculitis and a keloid scar) meet the standard for disabilities under the ADA.[6] The question, then, is whether the Plaintiff was discriminated against by Defendant's employees because of his disability or his "approach to h[is] disability." *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 42 (D.D.C. 2009). Again, Defendant's questioning about Plaintiff's beard, even after Plaintiff explained his alleged disability and waiver, is sufficient to allege that Defendant's harassing actions occurred because of Plaintiff's disability and how he chose to respond to his disability, *i.e.*, by not shaving. Compl. ¶¶ 10–11; Pl.'s Surreply at 6. Similarly, as discussed above, the suggestion that Plaintiff was selected for urinalysis because of his beard again establishes a plausible connection between the conduct and Plaintiff's approach to his disability.

### B. Was the Conduct Severe or Pervasive?

Even though Plaintiff has adequately pled that the harassing conduct is plausibly connected to his appearance and disability, he must still show that the conduct was sufficiently severe or pervasive. Specifically, a hostile work environment is a "workplace [that] is permeated

---

[6] Hostile work environment claims brought under the DCHRA turn on whether a plaintiff's alleged disability meets the definition of disability in the Americans with Disabilities Act of 1990 ("ADA"). *See Kennedy v. Gray*, 83 F. Supp. 3d 385, 389–90 (D.D.C. 2015) (citing *Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 153 (D.D.C. 2013)). The ADA defines disability as "a physical or mental impairment that substantially limits one of more major life activities of [an] individual." 42 U.S.C. § 12102(1).

with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). "[A]n objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 788 (citing *Harris*, 510 U.S. at 17); *see also Campbell-Crane & Assocs.*, 44 A.3d at 933; *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 889 (D.C. 2003). To determine whether an environment is objectively abusive, courts consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). Conduct must be extreme to amount to a hostile work environment and "simple teasing, offhand comments, and isolated incidents . . . will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788.

Here, none of the harassment that Plaintiff allegedly experienced rises to the level of severe or pervasive because it does not alter a term, condition, or privilege of his employment. *See Faragher*, 524 U.S. at 786. While Plaintiff subjectively perceived Defendant's actions to be hostile, the Court cannot conclude that a reasonable person would find a limited number of inquiries about uniform compliance and one drug screening to be objectively hostile or abusive. Specifically, as to pervasiveness, Plaintiff alleges only three specific incidents over the course of his employment, taking place across a roughly ten month period. *See Daka*, 711 A.2d at 93 (requiring "more than a few isolated incidents") (quoting *Howard University v. Best*, 484 A.2d

958, 981 (D.C. 1984)).  While the complaint also makes additional reference to "repeated" questionings by Mr. Williams since January of 2018, Compl. ¶ 11, this vague allegation—not indicating even the relative frequency or circumstances of the encounters—is insufficient to suggest that the conduct was actually pervasive.  As to severity, there is little to suggest that either the questionings or the urinalysis was objectively offensive or severe (*e.g.*, physically threatening or humiliating).  While Plaintiff admittedly alleges that, during the urinalysis, Major Brunson's driving "endangered [his] life," Pl.'s Resp. at 3, and that after the experience, Plaintiff was "[h]umiliated, [e]mbarrassed, [and] made fun of" because his supervisors made him remove his security belt in front of colleagues, the Court is not convinced that poor driving (which was not alleged to be intentional behavior) or untactful testing procedures objectively constitute conditions "so suffused with discriminatory intimidation, ridicule and insult of such severity or pervasiveness as to alter the conditions of the victim's employment and create an abusive working environment." *Lee v. Winter*, 439 F. Supp. 2d 82, 85 (D.D.C. 2006) (quoting *Hussain v. Principi*, 344 F. Supp. 2d 86, 107 (D.D.C. 2004)).  Instead, the alleged occurrences appear to be the sort of minor, isolated incidents and "ordinary tribulations of the workplace" that the Supreme Court has held cannot form the basis of a hostile work environment claim. *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 73 (D.D.C. 2007) (quoting *Faragher*, 524 U.S. at 788).

## V.  LEAVE TO AMEND

"In this Circuit, dismissals with prejudice under Rule 12(b)(6) are disfavored." *Coon v. Wood*, 68 F. Supp. 3d 77, 82 (D.D.C. 2014) (citing *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  And pursuant to Rule 15, a court should grant leave to amend a complaint when "justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996).  In addition, "when a claim is so ambiguous as to leave its

viability in doubt, the appropriate action is to grant leave to amend." *B.R. ex rel. Rempson v. District of Columbia*, 524 F. Supp. 2d 35, 42 (D.D.C. 2007). This is particularly true when the claimant is acting *pro se* because "an added measure of leniency is extended to pro se litigants with regard to procedural requirements." *Plummer v. Safeway, Inc.*, 934 F. Supp. 2d 191, 197 (D.D.C. 2013) (citing *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 877 (D.C. Cir. 1993)). Granting Martinez the benefit of the doubt that it remains possible for him to assert one or more sufficient claims if he pleads additional facts in a future filing, the Court will also grant him leave to file an amended complaint.

## VI.  CONCLUSION

For the foregoing reasons, the Court grants Constellis's motion to dismiss and denies its motion to strike. The Court, however, grants Martinez leave to file an amended complaint within thirty days of this decision (that is, on or before October 5, 2020). An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 3, 2020                                              RUDOLPH CONTRERAS
                                                                                                  United States District Judge